UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**TERESA L. DE BOLT,**

    **Plaintiff,**

    v.                                         **Civil Action 2:19-cv-5092**
                                                    **Chief Judge Algenon L. Marbley**
**COMMISSIONER OF SOCIAL**              **Magistrate Judge Chelsey M. Vascura**
**SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Teresa L. De Bolt ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for period of disability and disability insurance benefits. This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 11), the Commissioner's Memorandum in Opposition (ECF No. 12), Plaintiff's Reply (ECF No. 13), and the administrative record (ECF No. 8). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

        **I.**        **PROCEDURAL HISTORY**

On December 28, 2016, Plaintiff filed the subject application for period of disability and disability insurance benefits under Title II of the Social Security Act (the "Act"). (R. at 263–64.) In her application, Plaintiff alleged a disability onset of August 19, 2013. (*Id.*) Plaintiff's application was denied initially on March 8, 2017, and upon reconsideration on June 6, 2017.

(*Id.* at 151, 180.)  On April 4, 2017, Plaintiff requested a hearing before an administrative law judge ("ALJ").  (*Id.* at 202–03.)  ALJ Virginia Herring held a video hearing on January 25, 2019, at which Plaintiff, represented by counsel, appeared and testified.  (*Id.* at 68.)  Vocational expert Pauline McEachin (the "VE") also appeared and testified at the hearing.  (*Id.*)  At the hearing, Plaintiff amended her alleged onset date to October 20, 2016.[1]  (*Id.* at 72.)  On May 13, 2019, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Act.  (*Id.* at 33–54.)  On September 19, 2019, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision.  (*Id.* at 1–6.)  Plaintiff then timely commenced the instant action.  (ECF No. 1.)

In her Statement of Errors, Plaintiff asserts a single contention of error: that the ALJ failed to properly evaluate the opinion of her treating physician, Shelby Raiser, D.O.  (Pl.'s Statement of Errors, ECF No. 11.)  The undersigned finds that Plaintiff's contention lacks merit.

## II.     THE ADMINISTRATIVE DECISION

On May 13, 2019, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Act.  (R. at 33–54.)  The ALJ first found that Plaintiff meets the insured status

---

[1] Plaintiff filed a prior application for benefits in January 2014.  (R. at 135.)  That application was denied initially and upon reconsideration.  (*Id.*)  Plaintiff sought a hearing before an ALJ.  On October 19, 2016 (the day immediately prior to Plaintiff's amended alleged onset date), ALJ Irma Flottman issued a decision finding that Plaintiff was not disabled within the meaning of the Act.  (*Id.* at 132–50.)  ALJ Flottman's decision became the final determination of the Commissioner with respect to the January 2014 application.  The principles of *res judicata* provide that, in the absence of new and material evidence or changed circumstances, a subsequent ALJ is bound by the findings of a previous ALJ or Appeals Council decision.  *See* Social Security Acquiescence Rulings 98-3(6), 98-4(6); *Dennard v. Sec'y of Health and Hum. Servs.*, 907 F.2d 598 (6th Cir. 1990); *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997) as modified by *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929 (6th Cir. 2018).  ALJ Herring concluded that she was not bound by ALJ Flottman's decision, due to an intervening change in the regulations applicable to assessing mental health restrictions and new and material evidence of additional severe impairments.  However, the parties do not dispute that ALJ Herring properly considered ALJ Flottman's decision.

2

requirements through December 31, 2018. (*Id*. at 39.) At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantially gainful activity since October 20, 2016, the alleged onset date of Plaintiff's disability, as amended. (*Id.*) At step two, the ALJ found that Plaintiff had the following severe impairments: fibromyalgia; depression; anxiety; hypertension; obstructive sleep apnea; bilateral carpal tunnel syndrome; chronic obstructive pulmonary disease; and obesity. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*)

At step four, the ALJ set forth Plaintiff's RFC as follows:

After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) in that the claimant can lift and/or carry up to 20 pounds occasionally and 10 pounds frequently and can sit, stand and walk each, for 6 hours in an 8-hour workday. However, the claimant can occasionally climb stairs or ramps, never climb ladders, ropes or scaffolds and can occasionally balance, stoop, kneel, crouch or crawl. The claimant can frequently handle and finger bilaterally. The claimant must avoid environments with excessive pulmonary irritants and poor ventilation, dangerous machinery and

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

3

>unprotected heights.  The claimant is limited to simple tasks with only occasional changes in a work setting and no production rate pace, meaning where the production rate is set by an external source such as an assembly line or conveyor belt.  The claimant may have occasional contact with the public, coworkers and supervisors.

(*Id.* at 42.)  In assessing Plaintiff's RFC, the ALJ considered the evidence of record, including, *inter alia*, medical records documenting Plaintiff's diagnoses and treatment, and the June 30, 2018 opinion of Plaintiff's treating physician, Shelby Raiser, D.O.  (*Id*. at 42–47.)  Relevant to this appeal, the ALJ assigned "little weight" to Dr. Raiser's opinion on the basis that it was "not consistent with the overall evidence" and that the severity of the limitations noted therein were not supported by the record.  (*Id*. at 46.)

At step five of the sequential process, the ALJ found that Plaintiff was not capable of performing past relevant work as a rental car clerk or stock control clerk.  (*Id.* at 47.)  Relying on the VE's testimony, the ALJ found that jobs exist in significant numbers in the national economy for an individual with Plaintiff's age, education, work experience, and RFC.  (*Id*. at 48.)  Examples include general office clerk, inspector, and hand packager.  (*Id*.)  The ALJ further found that Plaintiff was capable of making a successful adjustment to such employment.  (*Id*.)  The ALJ therefore concluded that Plaintiff was not disabled under the Act for the period of October 20, 2016, through December 31, 2018.  (*Id.* at 49.)

Plaintiff now argues that the ALJ committed reversible error by failing to properly evaluate the opinion of Plaintiff's treating physician, Dr. Raiser.  (Pl.'s Statement of Errors, ECF No. 11.)  The undersigned will limit discussion of the evidence to those portions bearing on Plaintiff's contention of error.

### III.     RELEVANT EVIDENCE OF RECORD

The evidence includes records documenting Plaintiff's medical and psychiatric treatment dating back as far as August 2012.  In sum, those treatment records reflect that Plaintiff has

suffered from, *inter alia*, chronic pain due to fibromyalgia, obstructive sleep apnea, and depression.

### A. Shelby Raiser, D.O. – Thornville Family Medical Center

Plaintiff first established with Dr. Raiser on December 14, 2016. (R. at 434.) During their initial visit, Plaintiff reported to Dr. Raiser that she had struggled with fibromyalgia for "decades." (*Id*. at 434.) However, Dr. Raiser noted upon physical examination of Plaintiff that she "[a]ppears to be in no acute distress," with "[range of motion] intact [in the] spine and extremities. No joint erythema or tenderness. Normal muscular development. Normal gait." (*Id*. at 435.) At a visit the following month, Dr. Raiser again recorded normal physical exam findings. (*Id*. at 451.)

On February 10, 2017, Plaintiff visited Dr. Raiser complaining of generalized pain. (*Id*. at 556.) Plaintiff reported to Dr. Raiser that her experience with fibromyalgia flare ups was such that the flare is "self limited and goes away on its own." (*Id*.) However, in this instance, Dr. Raiser prescribed a steroid for pain and advised exercise and a healthy diet. (*Id*. at 558.) Again, Dr. Raiser noted normal physical exam findings, with no issues related to tenderness, range of motion, strength, or muscle spasm. (*Id*. at 557.) Following visits on March 28, 2017, and April 14, 2017, Dr. Raiser again recorded normal physical exam findings. (*Id*. at 560–61, 668–69.)

At a June 27, 2017 visit, Plaintiff reported that she was experiencing increased depression symptoms. (*Id*. at 704.) In response, and in light of Plaintiff's unwillingness to pursue counseling, Dr. Raiser gave Plaintiff a "homework" assignment, "to get up and do some garden work at least 1 hour a day. I want her to put a sticker for every day she does this on the calendar. She is to get at least 5 days in a 7 day time frame but she should aim for really everyday. We discussed [that some days] she will be forcing herself to do this, but it is important." (*Id*. at 706.)

At a visit the following month, Dr. Raiser recorded normal physical exam findings. (*Id*. at 709–10.)

Plaintiff did not visit Dr. Raiser again until January 9, 2018. (*Id*. at 712.) Although she reported new pain, Plaintiff told Dr. Raiser that she had been walking on a treadmill daily. (*Id*.) Dr. Raiser noted normal physical exam findings, with no issues related to tenderness, range of motion, strength, or muscle spasm. (*Id*. at 714.) Plaintiff next visited Dr. Raiser on June 2, 2018. (*Id*. at 717.) Dr. Raiser again recorded normal physical exam findings. (*Id*. at 718–19.)

On June 30, 2018, Dr. Raiser completed a Medical Source Statement for Plaintiff. (*Id*. at 815–16.) Therein, Dr. Raiser noted that she had diagnosed Plaintiff with "lumbar radiculopathy, fibromyalgia, severe depression, [obstructive sleep apnea], impaired fasting glucose, hand pain, smoker, hypokalemia, hypertension, [gastroesophageal reflux disease], and irritable bowel syndrome." (*Id*. at 815.) She also indicated that Plaintiff suffers from depression and psychological factors affecting her physical condition, for which she regularly sees a psychiatrist. (*Id*.) Dr. Raiser went on to opine that Plaintiff had the following limitations bearing on her ability to engage in work-related activities: Plaintiff could sit for less than two hours in an eight-hour workday; Plaintiff could stand/walk for less than two hours in an eight-hour workday; Plaintiff would require unscheduled breaks every 30-60 minutes for one to two hours at a time due to muscle weakness, fatigue, and pain or numbness; Plaintiff could lift no more than ten pounds; Plaintiff was bilaterally limited to handling, fingering, and reaching 25% of the time; Plaintiff was expected to be off-task 25% or more of the time; and Plaintiff was expected to be absent from work more than four days each month due to her impairments. (*Id*. at 815–16.)

Plaintiff visited Dr. Raiser twice more that year, on July 17, 2018, for reports of hand numbness and foot swelling, and on November 27, 2018, for a check-up. During each visit, Dr.

6

Raiser recorded normal physical exam findings. (*Id*. at 722–23, 820.) However, at the November 27, 2018 visit, Dr. Raiser noted that Plaintiff exhibited tender points consistent with fibromyalgia and referred Plaintiff to a rheumatologist. (*Id*. at 820–21.) Dr. Raiser also referred Plaintiff for x-rays of her hands, which showed only "mild early degenerative type changes." (*Id*. at 821, 851.)

**B.     Gautam Samadder, M.D. – Columbus Sleep Consultants**

Plaintiff first visited Dr. Samadder for obstructive sleep apnea and insomnia on December 29, 2016. (*Id*. at 383.) Dr. Samadder's notes from that visit indicate that Plaintiff reported back pain and leg pain, along with muscle soreness. (*Id*. at 384.) However, Dr. Samadder's physical examination of Plaintiff revealed "[n]o muscular weakness, muscular tenderness, joint swelling, crepitus or decreased range of motion." (*Id*. at 385.) Plaintiff saw Dr. Samadder four more times—on February 9, 2017, March 23, 2017, May 8, 2018, and November 20, 2018. On each occasion, Dr. Samadder reported normal physical exam findings, including with respect to muscular weakness, muscular tenderness, joint swelling, crepitus and range of motion. (*Id*. at 404–05, 568, 752–53, 857.)

**C.     Avneet Hira, M.D. – Muskingum Valley Health Centers**

Plaintiff has regularly seen psychiatrist, Dr. Hira, for treatment of depression since October 2014. Dr. Hira's treatment records reflect that the severity of Plaintiff's depression symptoms is correlated with her physical well-being. (*See, e.g., id*. at 426 ("Main issue is with pain and that tends to bring her down."), 760 ("Her mood and pain tends to go hand in hand.").) Plaintiff regularly reported to Dr. Hira that she was experiencing physical pain, but the severity of that pain fluctuated. For example, on December 7, 2017, Plaintiff reported that she "[h]as been hurting a little more with the cold" weather. (*Id*. at 758.) But, by June 7, 2018, Plaintiff reported that her "[p]ain level is [ ] better as it has been warmer" and that she "[h]as been able to

7

do more things," including working in her garden and sewing. (*Id*. at 762.) Each of Dr. Hira's treatment notes reflect that Plaintiff exhibited as "steady" gait. (*See e.g., id*. at 407, 409, 416, 417, 420, 422, 424, 426, 427, 430, 431, 499, 549, 754, 756, 758, 760, 762.)

## IV. STANDARD OF REVIEW

When reviewing a case under the Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner [ ] as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "[s]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the

claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## V.     ANALYSIS

Plaintiff argues that the ALJ committed reversible error when she failed to properly evaluate the opinion evidence of Plaintiff's treating physician, Dr. Raiser.  (Pl.'s Statement of Errors, ECF No. 11.  *See also* Pl.'s Reply, ECF No. 13.)  An ALJ must consider all medical opinions that she receives in evaluating a claimant's case.  20 C.F.R. § 404.1527(c).  When a treating physician's opinion is submitted, the ALJ generally gives deference to it "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical filings alone . . . ."  20 C.F.R. § 404.1527(c)(2); *Blakley*, 581 F.3d at 406 (internal quotations omitted).  If the treating physician's opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight."  20 C.F.R. § 404.1527(c)(2).

If the ALJ does not assign controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  Specifically, if an ALJ does not give a treating physician's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Id*.  Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] [a claimant's] treating source's opinion."  20 C.F.R.

9

§ 404.1527(c)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242). There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision. *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision).

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's RFC and a determination on whether a claimant meets the statutory definition of "disabled." 20 C.F.R. § 404.1527(d). Although the ALJ will consider opinions of treating physicians "on the nature and severity of [a claimant's] impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(d); *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 492–93 (6th Cir. 2010).

10

As noted above, the ALJ afforded "little weight" to Dr. Raiser's June 30, 2018 opinion. (R. at 46.) In that opinion, Dr. Raiser opined that Plaintiff: was limited to sitting, standing, and walking, each, for less than two hours in an eight-hour workday; would require unscheduled breaks every 30 to 60 minutes for one to two hours at a time, due to muscle weakness, chronic fatigue, and pain; could lift no more than ten pounds; was limited to handling, fingering, and reaching 25% of the time; would likely be off-task 25% or more of the time; and was expected to be absent more than four days per month on account of her impairments. (*Id*. at 815–16.)

The ALJ explained her reasons for discounting Dr. Raiser's opinion as follows:

> Dr. Raiser's opinion is given little weight because it is not consistent with the overall evidence particularly in light of handling and fingering limitations. While the claimant complained of bilateral hand pain with numbness, Dr. Raiser's own exam findings do not indicate the level of impairment for fingering and handling that Dr. Raiser ultimately opined. The record contains x-ray imaging of the hands in November 2018 . . . that show minimal early degenerative changes of the right hand and no findings erosive changes of the left hand. These findings do not rise to the level of a severe impairment and even when considered in conjunction with the clinical evidence of bilateral carpal tunnel syndrome, these findings do not support the severe functional limitations opined by Dr. Raiser. Additionally, there is nothing in the record that would limit claimant's sitting, standing and walking to the level in this opinion. The exam findings as noted above consistently found full range of motion in the lower extremities with no evidence of weakness, sensory deficit, decreased strength, deformity or tenderness. The claimant participated in a regular exercise regimen of walking on the treadmill an hour each day, and in terms of daily activities, the claimant told her mental health provider during the June 2018 medication review that she was feeling better and was engaged in more activity and was able to work in her garden.

(*Id*. at 46–47.)

The undersigned finds no error with the ALJ's consideration and weighing of Dr. Raiser's opinion. The ALJ properly declined to afford Dr. Raiser's opinion controlling weight and articulated her reasons for doing so. Namely, the ALJ noted that the severity of certain limitations opined by Dr. Raiser was inconsistent with record evidence—for example, such drastic restrictions on handling and fingering were not consistent with the minor degree of

11

degenerative changes seen in imaging of Plaintiff's hands. *See* 20 C.F.R. § 404.1527(c)(4). The ALJ further noted that the severity of certain other limitations was un-supported by medical evidence—namely, such extreme limitations on Plaintiff's ability to sit, stand, and walk were not supported by objective findings of restricted range of motion, weakness, sensory deficit, deformity, or tenderness. *See* 20 C.F.R. § 404.1527(c)(4). Not only are these valid and good reasons for discounting a treating source opinion, but, when present, they mandate such a discount. 20 C.F.R. § 404.1527(c)(2) (providing that a treating source opinion will be given controlling weight *if and only if* the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record"). Therefore, the ALJ did not violate the treating physician rule or otherwise err in her consideration and weighing of Dr. Raiser's opinion.

      Plaintiff makes a number of arguments in favor of a contrary result. Among them, Plaintiff disputes the ALJ's conclusion that "there is nothing in the record that would limit [Plaintiff's] sitting, standing and walking to the level in [Dr. Raiser's] opinion." (Pl.'s Statement of Errors at 8, ECF No. 11; Pl.'s Reply at 7, ECF No. 13. *See also* R. at 46.) Plaintiff further argues that the ALJ erred in failing to specifically address each of Dr. Raiser's opinions. (Pl.'s Statement of Errors at 9, ECF No. 11; Pl.'s Reply at 3, ECF No. 13.) Finally, Plaintiff disputes the ALJ's characterization of Plaintiff's exercise routine as inconsistent with Dr. Raiser's opinion. (Pl.'s Statement of Errors at 10, ECF No. 11; Pl.'s Reply at 5, ECF No. 13.) None of these arguments is persuasive. The undersigned will address each, in turn, below.

      As noted above, the ALJ discounted Dr. Raiser's opinion, in part, because she found such severe limitations on Plaintiff's ability to sit, stand, and walk unwarranted based on the record. Plaintiff disputes this finding, arguing instead that Dr. Raiser's own treatment notes, which

document a history of chronic pain and fatigue stemming from Plaintiff's fibromyalgia, support the limitations as opined. "This is the classic situation in which the record evidence could support two different conclusions. In such scenarios, the law obligates the court to affirm the ALJ's decision, because the ALJ is permitted to decide which factual picture is most probably true." *Waddell v. Comm'r of Soc. Sec.*, 2018 WL 2422035 at *10 (N.D. Ohio May 10, 2018), report and recommendation adopted, 2018 WL 2416232 (May 29, 2018); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) ("The substantial-evidence standard allows considerable latitude to administrative decision makers. It presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.") (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)). The existence of evidence in Plaintiff's favor does not mean that the ALJ's decision to discount Dr. Raiser's opinion is unsupported by substantial evidence. That Plaintiff's treatment records from multiple healthcare providers regularly note normal physical exam findings—including with respect to her range of motion, strength, and muscular tenderness—constitutes substantial evidence to support the ALJ's finding that the evidence did not support exertional limitations as severe as those opined by Dr. Raiser.

Equally unavailing is Plaintiff's next argument, that the ALJ erred by failing to expressly discuss each of Dr. Raiser's opinions. According to Plaintiff, this failure renders the ALJ's decision unreviewable and "casts doubt as to the credibility" of the RFC assessed by the ALJ. (Pl.'s Statement of Errors at 10, ECF No. 11.) As described above, however, the ALJ made clear that she did not adopt Dr. Raiser's opinion, but rather assigned it little weight. The ALJ then offered a detailed explanation for her finding that, at least in some regards, Plaintiff was not as

13

limited as Dr. Raiser opined. That is sufficient. *Cf. Friend*, 375 F. App'x at 551 (6th Cir. 2010) (explaining that the treating physician rule "is not a procrustean bed, requiring an arbitrary conformity at all times. If the ALJ's opinion permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused.").

Finally, Plaintiff takes issue with the ALJ's reference to Plaintiff's engagement in a treadmill regimen as evidence undermining Dr. Raiser's opinion. As Plaintiff correctly notes, the ALJ found that Plaintiff's fibromyalgia[3] constitutes a "severe" impairment—meaning, it significantly limits Plaintiff's ability to work. (Pl.'s Statement of Errors at 11, ECF No. 11. *See also* R. at 39; 20 C.F.R. § 404.1520(c).) Plaintiff also correctly notes that regular exercise, such as walking, is commonly recommended for patients suffering from fibromyalgia. (Pl.'s Statement of Errors at 11, ECF No. 11. *See also Rogers*, 486 F.3d at 249.) However, Plaintiff's argument breaches common sense when she asserts that "[t]here is no reason to believe that [walking on a treadmill for an hour each day] somehow contradicts Dr. Raiser's opinion regarding [Plaintiff's] limited ability to sit, stand and walk." (Pl.'s Statement of Errors at 11, ECF No. 11.) Notwithstanding the fact that Dr. Raiser recommended a regular walking routine to ease Plaintiff's fibromyalgia symptoms, Plaintiff's ability to engage in such regular walking routine is *certainly* relevant to the ALJ's consideration of Dr. Raiser's opinion bearing on her ability to walk. The ALJ did not, therefore, err in so considering. The undersigned is not

---

[3] Fibromyalgia "is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues . . . ." S.S.R. 12-2p at *2. "Nonetheless, a *diagnosis* of fibromyalgia does not automatically entitle [a claimant] to disability benefits . . . ." *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008) (emphasis in original) (citing *Sarchet v. Chater*, 78 F.3d 305, 306–07 (7th Cir. 1996) ("Some people may have a severe case of fibromyalgia as to be totally disabled from working . . . but most do not and the question is whether [claimant] is one of the minority.") (citations omitted)).

persuaded otherwise by Plaintiff's reference to *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011). (Pl.'s Reply at 6, ECF No. 13.)  In *Cole*, the Sixth Circuit stated that "the ALJ's focus on the claimant's ability to do certain activities in discounting the treating source's opinion does not constitute 'good reasons' for doing so when the claimant's testimony and other record evidence contradict the ALJ's finding." *Cole*, 661 F.3d at 939 (internal citation omitted).  Here, the ALJ did not *focus* on Plaintiff's treadmill regimen, so much as indicate her consideration of that piece of evidence in evaluating Dr. Raiser's opinion.  Notably, in support of her conclusion, the ALJ also cited Plaintiffs' healthcare providers' consistent findings that she exhibited a normal range of motion in the lower extremities with no evidence of weakness, sensory deficit, or tenderness, and Plaintiff's own reports to Dr. Hira about her ability to engage in physical activity.  (R. at 46–47.)

## VI.     DISPOSITION

In sum, from a review of the record as a whole, the undersigned concludes that substantial evidence supports the ALJ's decision denying benefits.  For the foregoing reasons, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## VII.    PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in

part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE